## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **ELY SAMUEL ORTIZ MULERO** | **CIVIL NO. 17-** |
| **Plaintiff** | **DISABILITY DISCRIMINATION; RETALIATION; WRONGFUL DISCHARGE; DAMAGES** |
| **v.** | |
| **BESTWAY TRANSPORT, INC.; UBOSS – UNIQUE BUSINESS OUTSOURCING STRATEGIC SOLUTION CORP.; EMILIO BARBOSA VÉLEZ, INC.** | **TRIAL BY JURY DEMANDED** |
| **Defendants** | |

## COMPLAINT

TO THE HONORABLE COURT:

COMES NOW plaintiff, Ely Samuel Ortiz Mulero ("Ortiz"), through the undersigned attorneys, and very respectfully states, alleges and prays:

### I. NATURE OF THE ACTION AND JURISDICTION

1. This action is brought pursuant to the Americans with Disabilities Act ("ADA") and Americans with Disabilities Act Amendments Act ("ADAAA"), 48 U.S.C. §§12101, *et seq.*; Puerto Rico Law No. 44 of July 2, 1985, as amended ("Law No. 44"); the Puerto Rico Disabilities Act, Puerto Rico Law No. 53 of August 30, 1992, as amended ("Law No. 53"); and the Puerto Rico Unjust Dismissal Act, Law No. 80 of May 30, 1976 ("Law No. 80"), seeking compensatory, double and liquidated damages, and equitable and injunctive relief to seek redress for defendants' disability discrimination and retaliation against Ortiz and/or compensation for wrongful discharge under Law No. 80.

2. This court has jurisdiction to entertain this action pursuant to the ADA and ADAAA, 42 U.S.C. §§12101, *et seq.* Its supplemental jurisdiction is also invoked pursuant to 28

U.S.C. § 1367(a) to hear the Commonwealth of Puerto Rico law claims because these are so related to the other claims as to which this court has original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

3. Venue is proper in this district pursuant to 28 U.S.C. §1391 (b)(1) and (2), as the defendants reside in Puerto Rico and all the discriminatory and retaliatory employment practices alleged in the Complaint occurred within the judicial district of Puerto Rico.

## II. THE PARTIES

4. Ortiz is of legal age, a citizen of the United States and a resident of Toa Baja, Puerto Rico.

5. Ortiz began working for defendants in 2008.

6. Ortiz is an employee under all of the federal and local statutes upon which he bases his requests for relief.

7. At all times relevant to this complaint, Ortiz suffered from diabetes mellitus.

8. All defendants knew that Ortiz suffered from diabetes mellitus.

9. Ortiz's diabetes mellitus affected several of his major life activities, including sleeping, walking, standing for a long time, lifting heavy items, concentrating, thinking, communicating and working.

10. At all relevant times, Ortiz was an "employee with a disability" under the provisions of the ADA and ADAAA, and is within the protected class under those statutes as well as under their Puerto Rico counterparts.

11. In the alternative, defendants regarded Ortiz as disabled because they were aware of and were in possession of medical documents pertaining to Ortiz's diabetes mellitus condition.

2

12. Co-defendant Bestway Transport, Inc. ("Bestway") is a corporation duly created under the laws of and with its principal place of business in the Commonwealth of Puerto Rico.

13. At all times relevant herein, Bestway was Ortiz's employer.

14. Co-defendant UBOSS – Unique Business Outsourcing Strategic Solution Corp. ("UBOSS") is a corporation duly created under the laws of and with its principal place of business in the Commonwealth of Puerto Rico.

15. At all times relevant herein, UBOSS was Ortiz's employer.

16. Co-defendant Emilio Barbosa Vélez, Inc. ("EBV") is a corporation duly created under the laws of and with its principal place of business in the Commonwealth of Puerto Rico.

17. At all times relevant herein, EBV was Ortiz's employer.

18. At all times relevant herein, UBOSS handled all of Bestway's Human Resources matters in conjunction with Bestway, including all employment matters pertaining to Ortiz.

19. UBOSS handled all of Bestway's Human Resources matters, to the point that UBOSS advised Bestway as to who to hire and fire.

20. The car that Ortiz drove as part of his duties for defendants was owned and operated by EBV.

21. Bestway, UBOSS and EBV had interrelated operations at all times relevant to this case.

22. Bestway, UBOSS and EBV had common management, Finance Departments and Human Resources departments at all times relevant to this case.

23. Bestway, UBOSS and EBV are "single employers" with respect to Ortiz.

24. Bestway employs more than twenty (20) employees on a daily basis as the term is defined in 42 U.S.C. §12114.

3

25. UBOSS employs more than twenty (20) employees on a daily basis as the term is defined in 42 U.S.C. §12114.

26. EBV employs more than twenty (20) employees on a daily basis as the term is defined in 42 U.S.C. §12114.

27. Defendants have more than 500 employees.

28. Bestway, UBOSS and EBV are, each, "employers" under all of the federal and state provisions of law under which Ortiz claims relief.

29. Bestway, UBOSS and EBV are, each, "employers" under Puerto Rico Laws Nos. 44, 53, 80 and 115.

30. Bestway, UBOSS and EBV may be referred to, collectively, as "defendants."

### III. ADMINISTRATIVE PROCEEDINGS

31. On September 19, 2016, Ortiz filed a charge of disability discrimination against Bestway before the Equal Employment Opportunity Commission ("EEOC").

32. The charge number at the EEOC is 515-2016-00597.

33. On January 17, 2017, Ortiz amended his charge to include a retaliation claim, as well as to add UBOSS and EBV as respondents.

34. The EEOC issued its Notice of Right to Sue as to Ortiz's charge on March 27, 2017.

35. The instant complaint is being filed within ninety (90) days of Ortiz's receipt of the Notice of Right to Sue.

### IV. THE FACTS

36. Ortiz repeats and incorporates each and every preceding allegation as if fully set herein.

37. Ortiz began working for defendants in 2008.

4

38. Ortiz worked for defendants as a messenger/gofer.  His duties involved driving a non-commercial vehicle to perform various tasks for defendants, including, among other things, driving to banks to make defendants' payments; going to government agencies to submit company documents; driving defendants' officers to their meetings; driving defendants' truck drivers to the places where their trucks were located; getting lunch for defendants' officers; and purchasing materials needed by defendants for their operations.

39. As a result of his diabetes mellitus condition, on July 15, 2016, Ortiz suffered a drop in blood sugar while he was at defendants' offices.

40. Ortiz recovered from the drop in blood sugar within ten (10) minutes.

41. The next day, while at defendants' offices, Ortiz commented that he had not yet eaten lunch and that he was going to eat lunch.

42. Aymar Castro ("Castro"), an employee of defendants, heard Ortiz's comment.

43. Castro apparently interpreted Ortiz's comment as meaning that he was suffering from another drop in blood sugar.

44. Castro called defendants' administrative offices and informed what Ortiz had said.

45. Immediately thereafter, defendants removed Ortiz from their payroll and stated that they would perform a series of medical tests on Ortiz.

46. Defendants stated that Ortiz could not continue working for them until the physicians evaluated him.

47. There was no reason to remove Ortiz from defendants' payroll.

48. Ortiz did not engage in any conduct that warranted depriving him of his salary.

49. Defendants' decision to stop paying Ortiz's salary constituted disability discrimination against Ortiz on account of his diabetes mellitus condition.

50. Defendants submitted Ortiz to examinations with two different physicians.

51. The first physician who examined Ortiz was Dr. Luis Catoni ("Dr. Catoni"), on July 19, 2016.

52. The second physician who examined Ortiz was Dr. Antolín Álvarez ("Dr. Álvarez"), about three weeks later.

53. Dr. Álvarez told Ortiz that he was in perfect shape and that there was no reason why he could not work.

54. Indeed, Dr. Álvarez told Ortiz that he was "20/20."

55. On July 28, 2016, Dr. Catoni issued his report as to Ortiz's visit.

56. Dr. Catoni's report was addressed to UBOSS and to Miguel Rodríguez Ruiz ("Rodríguez"), who works for UBOSS and handles defendants' employment matters.

57. Rodríguez's position is Human Resources Senior Director.

58. Dr. Catoni stated in his report that Ortiz suffered from type 1 diabetes mellitus and from chronic kidney disease.

59. Dr. Catoni stated in his report that Ortiz is treated with four (4) insulin injections per day, and that he also receives treatment at an endocrinology clinic.

60. Dr. Catoni stated the following in his report:

> A physical examination was performed on July 19, 2016 with essentially normal findings[.]  The neurologic examination was essentially normal and did not disclose[] any focal or global deficit.
>
> A follow up evaluation was done today.  [Ortiz] brought the results of laboratory tests, showing a very good control of his Diabetes, with excellent level of blood sugar and hemoglobin A1C.
>
> [Ortiz] denied recurrence of episodes of hypoglycemia after the insulin dose was adjusted.  He will continue the medical follow-up with his treating physician.

61. In spite of the above, Dr. Catoni stated that Ortiz was "not medically qualified" to perform the duty of "driving a commercial motor vehicle" because "the use of insulin is an absolute contraindication for driving a commercial motor vehicle." Dr. Catoni justified his conclusion on 49 C.F.R. 391.41 – 391.49.

62. Defendants told Ortiz that, in light of Dr. Catoni's findings, Ortiz could not continue performing his work driving defendants' vehicle.

63. The federal regulation cited by Dr. Catoni does not apply to Ortiz's case because Ortiz did not drive a "commercial motor vehicle" for defendants.

64. Ortiz had been driving a Toyota Yaris and then a Ford Transit van, neither of which fall under the definition of "commercial motor vehicle."

65. Defendants' reliance on Dr. Catoni's findings was a pretext to continue discriminating against Ortiz on account of his disability.

66. By September 9, 2016, defendants had continued without paying Ortiz his salary.

67. On that date, defendants charged Ortiz's vacation leave without informing him.

68. Consequently, Ortiz was terminated from employment on September 9, 2016.

69. Defendants' decision to terminate Ortiz constituted disability discrimination against him.

70. In the alternative, if defendants did not terminate Ortiz on September 9, 2016, the decision to deprive him of his salary since July 2016 was unlawful and constitutes discrimination against Ortiz on account of his disability.

71. As a result of the above, on September 19, 2016, Ortiz filed a charge of disability discrimination against Bestway at the EEOC.

72. Ortiz engaged in protected activity under the ADA, its amendments, Law No. 44 and Law No. 115 when he filed the EEOC charge.

73. The EEOC notified defendants of the EEOC charge.

74. On October 3, 2016, Rodríguez summoned Ortiz to Bestway's offices.

75. During the meeting, Rodríguez said on approximately three (3) different occasions that "because [Ortiz] went to the 'federales' [filed a charge at the EEOC]," he could offer Ortiz a position "in the shop."

76. The offer by defendants constituted a demotion because Ortiz's salary would be reduced from $8.00 per hour to the federal minimum wage, $7.25.

77. Rodríguez reiterated that "because Ortiz went to the federals [filed the EEOC charge]," the only position he could offer him was in the shop.

78. The demotion offer was in retaliation against Ortiz for filing the EEOC charge.

79. In the alternative, if Ortiz had not been terminated as of October 3, 2016, the offer constituted a demotion, which was in retaliation against Ortiz for filing the EEOC charge.

80. Rodríguez's statement that he could only offer a position in the shop to Ortiz "because he went to the 'federales'" constitutes evidence of retaliatory *animus*.

81. Rodríguez then gave Ortiz a letter in which he reiterated defendants' position that Ortiz could not "drive a commercial vehicle" because he allegedly "did not comply with 49 CFR 391.41."

82. Rodríguez further alleged that they would be "creating" a position for Ortiz and that he would promptly be provided with "training" for this position.

83. Ortiz was never given the alleged "training."

84. In view of defendants' unwavering decision not to reinstate Ortiz to his employment, the next day, October 4, 2016, Ortiz went to the offices of his personal endocrinologist, Dr.

Sharon M. Vélez Maymí ("Dr. Vélez"), who prepared a letter to defendants with respect to Ortiz's condition.

85. Dr. Vélez indicated that Ortiz's condition of diabetes mellitus is a disability covered by the Americans with Disabilities Act ("ADA"); that Ortiz had been under her care for over a year and had always been cooperative and compliant with doing everything he needed to do in order to maintain his blood glucose at target levels; that what Ortiz needed was to work in a sanitary place where he could check his blood sugar in private and have access to a refrigerator where he could store his insulin, as well as access to food and water; and that she recommended that Ortiz work in a ventilated place with no direct exposure to sunlight to avoid dehydration.

86. Ortiz provided Dr. Vélez's letter to defendants.

87. After receiving Dr. Vélez's letter, there was no further answer from defendants with respect to Ortiz's employment, and he continued to be deprived of his salary.

88. As a result, Ortiz sought legal advice and, on November 2, 2016, his attorneys sent a letter to defendants asserting that their actions constituted disability discrimination and that Ortiz would be filing an amended EEOC charge to include UBOSS, as well as to add a retaliation claim.

89. Ortiz also requested, through his attorneys, that he be reinstated to his position and that no retaliation be taken against him upon reinstatement.

90. Ortiz engaged in protected activity under the ADA and its amendments when he sent defendants the November 2, 2016 letter through his attorneys.

91. The next day, defendants' attorney wrote to Ortiz's attorneys and claimed that Ortiz's allegations were "deplorable" and "frivolous" and would be "handled as such."

92. Defendants further stated that any claim that Ortiz may file against them in the future "will be frivolous in nature."

93. Defendants' attorney's letter constitutes an attempt to chill Ortiz from complaining of their illegal conduct. This is unlawful retaliation.

94. Furthermore, defendants' attorney stated in the letter that Ortiz "would not be reinstated" to his position.

95. Defendants' decision not to reinstate Ortiz was in retaliation against him for filing the EEOC charge.

96. Defendants' attorney parroted Dr. Catoni and Mr. Rodríguez's claim that Ortiz allegedly could not work because he "does not comply" with 49 CFR 391.41, despite being aware that this regulation was completely inapplicable to Ortiz's case.

97. Nevertheless, defendants requested that, if Ortiz had any "medical evidence," Ortiz should submit it so that they could consider it.

98. Defendants' request for medical evidence was pretextual. They already had obtained all of the medical evidence needed with respect to Ortiz's condition; they had already submitted Ortiz to examinations with two physicians of their choice; and Ortiz had already provided them with the October 4, 2016 letter from Dr. Vélez.

99. On November 9, 2016, Ortiz's attorneys replied to defendants' letter of November 3 and warned them that their letter was an attempt to intimidate Ortiz into not filing a claim against defendants and, hence, constituted unlawful retaliation.

100. With respect to defendants' "request" for "medical evidence," Ortiz's attorneys once again sent them copy of the letter of October 4 from Dr. Vélez, of which they already had possession.

101. Less than three (3) hours later, defendants' attorney reiterated defendants' position that "in light of the applicable regulation, [Ortiz] cannot drive a car for the company."

102. Ortiz has suffered severe emotional and economic damages as a result of defendants' discrimination and retaliation.

103. Defendants are liable for all of the damages caused to Ortiz as a result of the discriminatory and retaliatory conduct related herein.

## V. FIRST CAUSE OF ACTION

104. Ortiz repeats and realleges each and every preceding allegation as if fully set herein.

105. Ortiz was discriminated against by defendants on the basis of his disability.

106. Ortiz has suffered and continues to suffer severe economic and emotional damages as a result of defendants' discrimination on account of his disability.

107. Defendants' conduct constitutes a violation of the ADA and the ADAAA.

108. Ortiz is entitled to economic and emotional damages and continuous loss of income caused as a proximate result of defendants' discriminatory conduct, in violation of the ADA and the ADAAA.

109. As a result of defendants' discriminatory conduct, Ortiz is also entitled to injunctive relief in the form of an order for defendants to reinstate him and to cease and desist of any further discriminatory and retaliatory conduct against Ortiz.

## VI. SECOND CAUSE OF ACTION

110. Ortiz repeats and reincorporates each and every preceding allegation as if fully set herein.

111. Defendants' discriminatory practices against Ortiz were malicious and/or carried out with reckless indifference towards Ortiz's federally protected rights.

11

112. Defendants knew or should have known that their conduct towards Ortiz contravened the ADA and the ADAAA.

113. As a result of defendants' disability discrimination against Ortiz, he is entitled to punitive damages in an amount not less than $299,999.00.

## VII. THIRD CAUSE OF ACTION

114. Ortiz repeats and incorporates by reference each and every preceding allegation as if fully set herein.

115. Defendants' conduct constitutes discrimination on the basis of disability under Puerto Rico Laws No. 44 and 53.

116. Ortiz has suffered and continues to suffer severe economic and emotional damages as a result of defendants' discrimination on account of his disability.

117. Defendants are liable to Ortiz for double the economic and emotional damages and continuous loss of income caused as a proximate result of its discriminatory conduct on the basis of disability.

## VIII. FOURTH CAUSE OF ACTION

118. Ortiz repeats and incorporates by reference each and every preceding allegation as if fully set herein.

119. Ortiz engaged in protected conduct under ADA, ADAAA and Law No. 44.  As a result of the assertion of his rights to work in an environment free of disability discrimination, he has been subjected to adverse employment actions, including termination, a retaliatory job offer and/or demotion and a refusal to reinstate him to his position.

120. Ortiz has suffered and continues to suffer severe economic and emotional damages as a result of defendants' retaliation against him.

121. As a result of defendants' retaliatory conduct, Ortiz is entitled to an award of economic, emotional, double and special damages and continuous loss of income caused as a proximate result of defendants' retaliatory conduct.

122. As a result of defendants' retaliatory conduct, Ortiz is also entitled to injunctive relief in the form of an order for defendants to reinstate him and to cease and desist of any further retaliatory treatment against him.

## IX. FIFTH CAUSE OF ACTION

123. Ortiz repeats and incorporates by reference each and every preceding allegation as if fully set herein.

124. Defendants' retaliatory practices against Ortiz for exercising his rights under the ADA and the ADAAA were malicious and/or carried out with reckless indifference towards Ortiz's federally protected rights.

125. Defendants knew or should have known that their conduct towards Ortiz contravened the federal and local anti-retaliation provisions.

126. Ortiz is entitled to punitive damages as a result of defendants' retaliatory conduct in an amount not less than $299,999.00.

## X. SIXTH CAUSE OF ACTION

127. Ortiz repeats and incorporates by reference each and every preceding allegation as if fully set herein.

128. Ortiz engaged in "protected conduct" under Law No. 115.

129. As a result of engaging in protected conduct, defendants retaliated against Ortiz in violation of Law No. 115.

13

130. Ortiz has suffered and continues to suffer severe emotional and economic damages as a result of defendants' retaliation against her.

131. Defendants are liable to Ortiz for double the economic and emotional damages and continuous loss of income caused as a proximate result of their retaliatory conduct, together with an award of costs and attorneys' fees.

## XI. SEVENTH CAUSE OF ACTION

132. Ortiz repeats and incorporates by reference each and every preceding allegation as if fully set herein.

133. Defendants terminated Ortiz without just cause in violation of Puerto Rico Law No. 80.

134. As a result of Ortiz's wrongful termination, he is entitled to indemnity under Law No. 80 in the total amount of $11,643.27, plus an award of attorneys' fees equal to no less than 15% of his indemnity.

## XII. DEMAND FOR JURY TRIAL

135. Ortiz hereby demands that all of his causes of action be tried before a jury.

**WHEREFORE**, all premises considered, Ortiz prays from this Honorable Court the following relief:

1.  An order directing defendants to reinstate him to a discrimination and retaliation-free work environment;

2.  Loss of income;

3.  Lost benefits, both past and future;

4.  Compensatory and emotional damages in an amount not less than $750,000.00;

14

5.     Double compensatory, emotional and economic damages under Laws Nos. 44, 53 and 115.

6.     Punitive damages in an amount not less than $299,999.00;

7.     An award of reasonable attorneys' fees, together with costs, litigation expenses and necessary disbursements;

8.     Indemnity under Puerto Rico Law No. 80 in the amount of $11,643.27;

9.     Prejudgment interests;

10.     An income tax differential for any amount to be paid by Ortiz in excess of his usual personal income tax rate as a result of compensation for lost income as relief for defendants' discriminatory and retaliatory conduct; and

11.     Any other remedies which this court may deem just and proper.

**RESPECTFULLY SUBMITTED.**

**WE HEREBY CERTIFY** that today this document was filed electronically through the CM/ECF system which will send notification to the parties to their registered email addresses.

In San Juan, Puerto Rico this 31st day of May, 2017.

| **LAW OFFICE OF CARLOS VERGNE** | **GONZÁLEZ MUÑOZ LAW OFFICES, PSC** |
|---|---|
| 24 Mariana Bracetti St., 2nd Floor | P.O. Box 9024055 |
| San Juan, PR 00918 | San Juan, PR 00902-4055 |
| Tel. (787) 753-3799 | Tel. (787) 766-5052 |
| Fax (787) 759-8429 | Fax (787) 766-5551 |
| e-mail: carlosvergne@aol.com | e-mail: info@gonzalezmunozlaw.com |
| | |
| *s/Carlos M. Vergne Vargas* | *s/Juan Rafael González Muñoz* |
| Carlos M. Vergne Vargas | Juan Rafael González Muñoz |
| USDCPR No. 209611 | USDCPR No. 202312 |
| | |
| | *s/ Juan C. Nieves González* |
| | Juan C. Nieves González |
| | USDC-PR No. 231707 |